IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DE'WAYNE GERMAN THOMAS,

    Plaintiff,

vs.

DR. ANDREW NANGALAMA, et al.,

    Defendants.

No. 2:10-cv-1295 JAM EFB P

ORDER AND
FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move for summary judgment. Dckt. No. 50. For the reasons explained below, it is recommended that the motion granted in part and denied in part.

**I.    The Complaint**

This action proceeds on the verified complaint filed May 25, 2010. Dckt. No. 1. Plaintiff asserts therein that defendants denied him adequate medical care by withholding and then delaying a necessary urology consultation and by refusing to provide needed pain medication. *Id.* at 1.[1] Specifically, plaintiff alleges that he started experiencing discharge from his penis in early March 2009. *Id.* at 3. Defendant Nangalama, a medical doctor, evaluated plaintiff in the

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

1

prison medical clinic in mid-March.  *Id.*  Defendant Nangalama ordered a urine test and a follow-up appointment in 7-10 days, but provided no further treatment.  *Id.*  By the end of March, plaintiff began experiencing severe pains in his stomach, lower back, and scrotum.  *Id.*  A nurse, Jill Walker, evaluated plaintiff on March 30 and told him that his urine test revealed an abnormal amount of white blood cells but that his follow-up appointment with defendant Nangalama had not been scheduled.  *Id.*  Walker told plaintiff that his appointment would occur on April 2, but it did not, so plaintiff filed a medical grievance.  *Id.* at 3-4.  Plaintiff was summoned to the medical clinic on April 8.  *Id.* at 4.  Defendant Nangalama prescribed antibiotics to plaintiff but no pain medication.  *Id.*  Plaintiff asked why nothing was being done for his pain, and defendant Nangalama responded, "You don't look to be in any pain at this time."  *Id.*

The course of antibiotics prescribed by defendant Nangalama seemed to resolve plaintiff's penile discharge, but not the associated pain.  *Id.*  Plaintiff submitted a request for health care services on May 12 and was evaluated by Nurse R. Singh on May 13 for his complaint of ongoing and now excruciating pain.  *Id.*  During the appointment, Singh phoned defendant Nangalama and arranged a same-day appointment for plaintiff.  *Id.*  Plaintiff told defendant Nangalama that although the discharge was gone, the pain in his penis and testicles had gotten worse and was occurring as they spoke.  *Id.*  Defendant simply responded that plaintiff "looked clinically stable" and excused him without prescribing any pain medication.  *Id.* at 5.

On May 21, plaintiff had a routine appointment with defendant Nangalama for his asthma.  *Id.*  During the appointment, plaintiff brought up "his chronic penile pain issues," but defendant Nangalama told plaintiff that he looked fine and again excused plaintiff without providing pain medication.  *Id.*  The following day, plaintiff's scrotum became inflamed and swollen, his pain increased, and the discharge from his penis returned.  *Id.*  Nurse Singh told plaintiff he would try to get him an appointment as soon as possible, but plaintiff still had not

1  been seen by May 29, so he returned to the nursing station.  *Id.*  Nurse Walker told plaintiff she
2  would call defendant Nangalama to see what he wanted to do.  *Id.*  Later in the day, Walker told
3  plaintiff that defendant Nangalama had asked for another urine sample and had written another
4  antibiotics prescription, but had not addressed plaintiff's complaints of pain.  *Id.* at 6.

5       During a June 2 appointment with defendant Nangalama, plaintiff told him that he had
6  "started pissing out long white strips and that his urine smelled like strong ammonia."  *Id.*
7  Plaintiff complained again of pain in his penis, scrotum, and testicles, and told defendant
8  Nangalama that the pain had been recurring frequently, with off-and-on swelling.  *Id.*  Defendant
9  Nangalama examined plaintiff and noted that his scrotum and testicles felt tender.  *Id.*  Defendant
10 Nangalama told plaintiff he could have prostatitis, which could cause some pain and discharge.
11 *Id.* at 7.  However, defendant Nangalama did not provide pain medication or a referral for
12 plaintiff to see a urologist.  *Id.*

13      On June 17, plaintiff had a medical appointment with regard to a different medical issue.
14 *Id.*  Plaintiff was evaluated by Nurse Practitioner C. Bakewell.  *Id.*  After reviewing plaintiff's
15 records and examining plaintiff, Bakewell concluded that plaintiff should be seen by a urologist
16 and completed a request for a referral.  *Id.*

17      On July 1, plaintiff's testicles again became swollen, and plaintiff experienced severe,
18 throbbing pain and discharge.  *Id.*  He submitted a request for medical care indicating that his
19 pain was a "six" on the 1-10 pain scale.  *Id.*  The next day a prison nurse evaluated plaintiff and
20 arranged for a medical appointment.  *Id.* at 7-8.  At the appointment on July 9, plaintiff asked
21 defendant Nangalama why nothing was being done to address his pain.  *Id.* at 8.  Defendant
22 Nangalama responded that plaintiff had been referred to a urologist and should be seen by one
23 soon.  *Id.*  He then excused plaintiff without providing pain medication.  *Id.*

24      On July 10, plaintiff received a response to a medical appeal he had filed complaining
25 about the treatment, or perceived lack thereof, he had received for his genital condition.  *Id.*
26 ////

1  Although plaintiff had complained in the appeal about not receiving any treatment for his pain,
2  defendant Bal, who reviewed the appeal, did not respond to that complaint. *Id.*

3  Defendant Nangalama ordered another urine test and a blood test in mid-July. *Id.* at 8-9.
4  Nurse Walker told plaintiff that the request for a urology referral had been denied around July 8
5  "because it had been decided that plaintiff continue taking the antibiotics a little longer." *Id.* at
6  9. Plaintiff ascribed responsibility for the denial of the request for a urology referral to
7  defendants Nangalama and Bal. *Id.*

8  On July 23, plaintiff wrote a letter to Nangalama. *Id.* Plaintiff complained to Nangalama
9  that the antibiotics had not been effective and that the urine and blood tests had thus far not led
10 to a definitive diagnosis. *Id.* Plaintiff said, "I have been listing, describing, complaining, and
11 informing you of the presence and existence of chronic and substantial pain on both sides of my
12 lower scrotum sacks, my lower mid-section." *Id.* Plaintiff complained that Nangalama had not
13 given him any pain medication or referred him for a urology appointment despite not being able
14 to treat plaintiff effectively. *Id.* When plaintiff told Nurse Practitioner Bakewell about the letter,
15 she copied it and put it into plaintiff's medical file. *Id.* Bakewell told plaintiff she would have
16 liked to give him something for the pain but could not because plaintiff was going to have
17 surgery soon for an unrelated condition. *Id.* at 9-10.

18 Plaintiff received the unrelated surgery on July 29 and was given Tylenol with Codeine
19 ("Tylenol #3") for resulting pain. *Id.* at 10. On August 4, plaintiff told defendant Nangalama
20 that the Tylenol #3 was also effective at relieving the pain in his penis and testicles. *Id.* He
21 asked if Nangalama would continue the prescription once it expired. *Id.* Nangalama responded
22 that plaintiff should just keep taking the antibiotics and that Nangalama had tried to do what he
23 could for plaintiff, but that his "hands were tied." *Id.*

24 By August 21, plaintiff's pain had progressed, and plaintiff felt sharp pains while
25 urinating. *Id.* Plaintiff's Tylenol #3 prescription from the surgery had expired. *Id.* Plaintiff
26 submitted a request for medical care and was seen by defendant Nangalama on August 24. *Id.*

Plaintiff told Nangalama how his pain had worsened, but Nangalama still refused to provide pain medication. *Id.* At an appointment on September 3, Nangalama told plaintiff that "there hadn't been any positive changes in the results of all plaintiff's laboratory test[s], nor improvement of plaintiff's overall medical condition, even after plaintiff's extensive use of antibiotics." *Id.* at 11. Nangalama submitted a second urology referral request but would not prescribe pain medication. *Id.*

On October 1, plaintiff was awoken at 4 a.m. by pain in his scrotum, testicles, and penis. *Id.* Plaintiff noticed that his penile discharge was thicker and darker and that both testicles were swollen. *Id.* Nurse Singh evaluated plaintiff on October 3 and wrote an urgent request for a medical appointment. *Id.* At the subsequent appointment on October 7, defendant Nangalama arranged for plaintiff to be taken to U.C. Davis Medical Center ("UCDMC") for emergency treatment. *Id.* at 11-12. Defendant Nangalama noted that plaintiff had "acute testicular swelling with a recurrent penile abnormal discharge for over seven months." *Id.*

Medical providers at UCDMC examined plaintiff, took a swab from his urethra, and performed an ultrasound. *Id.* A nurse practitioner, Kelleen Porte, diagnosed plaintiff with "scrotal pain" and discharged him without providing pain medication. *Id.* No follow-up or medication was provided upon plaintiff's return to the prison. *Id.*

Defendant Nangalama next examined plaintiff on November 2. *Id.* Plaintiff told Nangalama that he had been experiencing daily pain, but Nangalama did not prescribe pain medication. *Id.* Plaintiff began to worry excessively that his condition would cause him to lose his genitals, which made plaintiff lose sleep. *Id.*

On November 22, plaintiff submitted another request for medical care complaining of his severe pain and "begging" for something to be done about it. *Id.* at 12-13. Two days later, Nangalama wrote plaintiff a prescription for Tylenol #3. *Id.* at 13. Plaintiff was eventually diagnosed with chronic prostatitis on February 24, 2010, "after undergoing a medical procedure referred to as a 'urethroscopy, cystoscopy.'" *Id.*

5

## II.     Evidentiary Objections

Defendants object to a number of statements in plaintiff's declaration submitted in support of his opposition to the summary judgment motion. *See* Dckt. No. 44 (Pl.'s Decl.); Dckt. No. 43-2 (Defs.' Objections). The court sustains the objections as follows and otherwise overrules them: Paragraphs 16, 17, 36, 50-56, 58, 60 (defendants do not object to the portion of paragraph 60 stating, "He also knew that this type was long lasting."), 61, 65 in part (the court overrules the objection to the sentence, "However, Bal never said anything about the pain."), 67, 75, 84, 86, 87 (defendants object solely to one sentence in paragraph 87: "These facts demonstrates [sic] that defendants' [sic] had been all along refusing to treat my prostatitis pain, and in fact, withholding medical care and treatment."), 88, 93 (defendants object solely to one sentence in paragraph 93: "He knew that while at the E.R. I had been given an ultrasound and that this revealed that I had had an accumulation of fluid in or about the covering of my testicles."), 94, 97 in part (the court sustains the objection only to the words "informing Nangalama"), 100, 103 in part (the court sustains the objection only to the words "six months after being aware of all of my pain" and "This is the same medications [sic] that defendant Bal had known would assist in alleviating the pain symptoms caused by my prostatitis condition."), and 105. The listed portions of the declaration lack foundation and misstate the evidence cited.

Defendants also object to a number of plaintiff's disputed facts. *See* Dckt. No. 42 (Pl.'s Disputed Facts); Dckt. No. 43-1 (Defs.' Objections). Those objections are overruled but the court has not considered the portions of plaintiff's disputed facts which consist of legal conclusions.

## III.    Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury

6

to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

7

depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dckt. No. 50-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**IV.    Analysis**

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized

////

9

1  measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment
2  violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

3        To succeed on an Eighth Amendment claim predicated on the denial of medical care, a
4  plaintiff must establish that he had a serious medical need and that the defendant's response to
5  that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*
6  *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to
7  treat plaintiff's condition could result in further significant injury or the unnecessary and wanton
8  infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was
9  (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer*
10 *v. Brennan*, 511 U.S. 825, 828 (1994).

11       Neither a defendant's negligence nor a plaintiff's general disagreement with the
12 treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106;
13 *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d
14 390, 394 (9th Cir. 1988). Evidence that medical caregivers disagreed as to the need to pursue
15 one course of treatment over another is also insufficient, by itself, to establish deliberate
16 indifference. *Jackson*, 90 F.3d at 332. Rather, the plaintiff must show that the course chosen by
17 the defendant was medically unacceptable under the circumstances and that the defendant was
18 aware of the risk posed by the chosen course. *Jackson*, 90 F.3d at 332; *Farmer*, 511 U.S. at 840.
19 When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury.
20 *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, *WMX*
21 *Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *see also Wood v.*
22 *Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay in treatment did not
23 violate Eighth Amendment where there was no emergency and given plaintiff's condition, i.e., a
24 severe shoulder injury, the only remedy immediately available was painkillers).

25       Defendants argue that they should be granted summary judgment because plaintiff failed
26 to follow Local Rule 260(b)'s requirement that he reproduce defendants' statement of undisputed

10

1  facts with admissions or denials of each.  While plaintiff has not mechanically copied
2  defendants' statement of facts, it is apparent from his opposition which facts he disputes and
3  what evidence he relies on for the claimed dispute.
4       Moving to defendants' substantive arguments, they first contend that there is no evidence
5  that defendants were deliberately indifferent to plaintiff's serious medical needs.  Defendants
6  point to evidence showing Nangalama's frequent contacts with plaintiff for his prostatitis
7  between March 16, 2009 and January 11, 2010, including frequent lab tests, cycles of antibiotics,
8  a request for a urology referral, and an emergency-basis outside appointment for plaintiff's
9  symptoms.  This argument misses the point.  Plaintiff does not complain that he was not given
10 antibiotics or lab tests.  Rather, he complains that he was not given pain medication in spite of
11 repeated complaints of pain and that his urology referral was unreasonably delayed.
12      With regard to plaintiff's claim that pain medication was not provided, defendant
13 Nangalama argues that plaintiff did not complain about his pain to defendant Nangalama and had
14 no assessable pain.  Obviously, this assertion is disputed.  Plaintiff has produced evidence raising
15 a triable issue of fact that he did, in fact, complain of pain on many occasions to defendant
16 Nangalama. Dckt. No. 44 (Pl.'s Decl. and exhibits thereto) at 5 (plaintiff complained of pain on
17 April 8 and April 16), 5-6 (defendant Nangalama ignored plaintiff's complaints of pain on April
18 30), 6-7 (defendant Nangalama ignored plaintiff's May 13 complaint of "now excruciating
19 pains"), 7-8 (May 21 complaint of pain ignored), 9 (May 29 complaint of pain ignored), 10 (June
20 2 complaint of pain), 12 (July 9 complaint of pain ignored), 15 (July 23 letter from plaintiff to
21 defendant Nangalama complaining of defendant's failure to treat plaintiff's pain), 16 (August 4
22 refusal by defendant Nangalama to continue plaintiff's Tylenol #3 prescription), 18 (October 7
23 complaint of pain).  Indeed, defendant Nangalama's own evidence plainly shows that plaintiff
24 complained of pain and that defendant Nangalama witnessed "tenderness" in plaintiff's genitals
25 well before defendant Nangalama provided pain medication in November 2009.  Dckt. Nos. 52
26 & 53 (Decl. of Def. Nangalama and exhibits thereto) at 52-2 p. 18, 52-3 p.2, 52-3 p. 14, 52-4 p.

11

1 2, 52-4 p. 15, 53-1 p. 6, 53-2 p. 11, 53-2 p. 19.  The evidence before the court raises a triable
2 issue of fact as to whether it was reasonable for Nangalama not to prescribe pain medication in
3 the face of plaintiff's recurring and escalating pain and other symptoms.  The evidence further
4 raises a triable issue as to whether defendant Bal was deliberately indifferent to plaintiff's
5 complaints of pain when he failed to respond to those complaints in reviewing plaintiff's
6 grievance at the second level of review.  Dckt. No. 44 at 71-72.  Plaintiff has alleged that he was
7 denied treatment for his chronic pain, and plaintiff's evidence raises a triable issue as to whether
8 defendant Bal — a medical doctor — was made aware of this allegation of ongoing suffering
9 through plaintiff's grievance.  *See, e.g., Pogue v. Igbinosa*, No. 1:07-cv-01577 GMS, 2012 U.S.
10 Dist. LEXIS 23150, at *23-24 (E.D. Cal. Feb. 23, 2012) (medically-trained individuals who are
11 made aware of serious medical needs through reviewing a prisoner's grievance may be liable for
12 failure to treat those needs).

13 Defendants argue that they are entitled to qualified immunity.  Their argument is
14 predicated on the assertion that they simply did not violate plaintiff's rights in the first place.
15 Nangalama argues that "[n]o physician would reasonably believe that providing continuous care
16 and treatment consistent with community standards for an inmate with prostatitis, including
17 appropriate antibiotics, numerous follow-up examinations, referrals for lab tests, and referrals to
18 outside specialists, violated a clearly established right of an inmate."  Dckt. No. 50-3 at 39.  He
19 also asserts that "[n]o physician would reasonably believe that not prescribing an inmate pain
20 medication until the inmate actually complained to the physician about pain violated a clearly
21 established right of an inmate."  However, as already discussed, there are genuine issues of
22 material fact as to whether defendant Nangalama deliberately and inappropriately chose not to
23 prescribe pain medication in the face of plaintiff's recurring and escalating pain and other
24 symptoms manifesting a serious medical need.  It was well established as of 2009 that a doctor's
25 failure to provide treatment that would alleviate an inmate's significant pain could constitute
26 deliberate indifference in violation of the Eighth Amendment.  *McGuckin*, 974 F.2d at 1061-62.

Accordingly, summary judgment is not appropriate on plaintiff's claim that defendants unreasonably failed to provide him pain medication between March and November 2009.

With regard to plaintiff's claim that defendants unreasonably delayed an outside urology consultation, the facts are not disputed. The first request for an outside urology appointment was submitted by Nurse Practitioner Bakewell on June 17, 2009. Dckt. No. 50-4, Defs.' Statement of Undisputed Facts ISO Defs.' Mot. for Summ. J. (hereinafter "DUF") 117. An "MAR Committee" consisting of both defendants, Bakewell, and seven other physicians considered the request on July 16, 2009 and denied it. DUF 137-157. The committee determined that plaintiff should be continued on antibiotics for another six weeks and that his need for a urology consultation should then be reconsidered. DUF 157-158. Plaintiff has not pointed to any evidence showing that this determination was an unreasonable response to his symptoms. When plaintiff did receive a consultation with an outside urologist, plaintiff's diagnosis (prostatitis) and course of treatment (antibiotics) did not change, and apart from the pain medication issue plaintiff does not argue that his condition would have resolved sooner if the consultation had occurred sooner. Accordingly, summary judgment is appropriate on plaintiff's claim that defendants unreasonably delayed a consultation with an outside urologist.

**V.    Order and Recommendation**

For all of the above reasons, it is hereby ORDERED that defendants' objections to plaintiff's declaration (Dckt. No. 43-2) are sustained in part as indicated in this order and otherwise overruled.

It is further RECOMMENDED that the July 27, 2012 motion for summary judgment (Dckt. No. 50) be granted in part, as to plaintiff's claims that defendants unreasonably delayed a consultation with an outside urologist for his prostatitis in 2009, and otherwise denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
3  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
4  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
5  Dated:  March 26, 2013.

                EDMUND F. BRENNAN
                UNITED STATES MAGISTRATE JUDGE